# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 27, 2010

## GEORGE T. McCLAIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-I-1125    Monte Watkins, Judge**

---

### No. M2009-02244-CCA-R3-PC - Filed January 26, 2011

---

The Petitioner, George T. McClain, appeals the Davidson County Criminal Court's denial of post-conviction relief from his conviction for sale of less than one-half gram of cocaine, a Class C felony. See T.C.A. § 39-17-417 (2010). On appeal, he contends that (1) the trial court imposed illegal sentences and (2) trial counsel rendered ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

George T. McClain, Nashville, Tennessee, pro se (on appeal); and Jennifer Booth and Virginia Flack, Assistant District Public Defenders (at trial), for the appellant, George T. McClain.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Deborah Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The Petitioner pled guilty on October 17, 2005, to the sale of less than one-half gram of cocaine and was sentenced as a Range II, multiple offender to six years in community corrections. The facts were presented by the State at the guilty plea hearing:

> [O]n August 15, 2005, Officer Younek Deloria and other officers were working undercover in the vicinity of Eighteenth Avenue North and D.B. Todd to purchase crack cocaine or other drugs from street-level dealers. Officer Deloria would testify that he encountered [the Petitioner] at that location – which is here in Davidson County, Tennessee – gave him twenty dollars of previously photocopied buy money. [The Petitioner] took the money and came back with a small rock of crack cocaine, which field-tested positive for that schedule two drug.

On August 17, 2007, the Petitioner conceded that he violated the requirements of the community corrections program. His sentence was amended, pursuant to a plea agreement, to ten years in community corrections as a Range III, persistent offender. On November 28, 2007, the Petitioner conceded another violation of the community corrections program. His sentence was again amended, pursuant to a plea agreement, to ten years' confinement as a Range II, multiple offender, with credit for time served. We note that the Petitioner had different representation at each of his revocation hearings.

At the post-conviction hearing, trial counsel who represented the Petitioner at his August 17, 2007 hearing testified that she attended Columbia Law School and that she had practiced law for nearly six years. She said that she worked as an assistant public defender and that she began representing the Petitioner at his revocation hearing on August 17. She could not recall how many times she met with the Petitioner before his hearing but said she discussed the Petitioner's case with him. She said she investigated the circumstances of the Petitioner's community corrections violation and the law controlling revocation hearings and resentencing. She said that although she was prepared for the hearing and had members of the Petitioner's family present in court, the Petitioner accepted a plea agreement offered by the District Attorney on the day of the hearing. She said the Petitioner agreed to concede his violation, to acknowledge that he had five qualifying felonies to make him a Range III offender, and to be sentenced as a Range III offender to ten years in community corrections at forty-five percent release eligibility.

Trial counsel agreed that by conceding his violation, the Petitioner waived his right to have a hearing in which the State would have the burden of proving his violation. She disagreed the trial court did not have authority to increase the Petitioner's sentencing range. She agreed the trial court asked the Petitioner if he conceded his violation, if he had five felonies, and if he understood that he agreed to be sentenced as a Range III, persistent offender to ten years of community corrections. She agreed that the Petitioner answered by stating, "Yes, sir." She said that she believed the Petitioner knowingly and voluntarily waived his right to a hearing and that the Petitioner understood the conditions of his plea agreement because he was one of the most intelligent people she had ever represented. She disagreed that Tennessee courts required a resentencing hearing when a person pled guilty to a suspended sentence violation.

On cross-examination, trial counsel agreed that the Petitioner previously violated the terms of his community corrections program and had his sentence revoked twice as a result. She agreed she discussed community corrections and resentencing with the Petitioner. She agreed she advised the Petitioner of his rights, of his ability to have a hearing, and of the possibility that he could be incarcerated for violating the terms of the community corrections program. She said that the Petitioner accepted the plea agreement to avoid being incarcerated and that he voluntarily agreed to be sentenced to ten years in community corrections at forty-five percent release eligibility. She agreed that the trial court advised the Petitioner of his rights and that the Petitioner understood he waived his right to a hearing. She agreed that on November 28, 2007, the Petitioner was resentenced as a Range II, multiple offender to ten years' confinement at thirty percent release eligibility.

The Petitioner testified that he violated the terms of the community corrections program. He said that although he conceded his violation, he was unaware that he was entitled to a revocation hearing. He said he would have made "different decisions" had he known he was entitled to a revocation hearing. He said trial counsel informed him that the State was not ready to proceed with his hearing on August 17, 2007. He said he requested that the hearing be held anyway because his family was in attendance. He denied he had the five felony convictions necessary to establish him as a Range III offender and said he only had two felony convictions before pleading guilty to the sale of less than one-half gram of cocaine.

On cross-examination, the Petitioner testified that he only had two prior felony convictions. He then agreed he had felony convictions for possessing drugs, armed robbery, and two convictions for aggravated burglary. He agreed that these four felony convictions qualified him as a Range II offender and that he could have received up to ten years' confinement at a sentencing hearing on August 17, 2007. He agreed he was willing to receive a ten-year sentence in community corrections at forty-five percent release eligibility

to avoid incarceration. He denied that he discussed resentencing with trial counsel or that trial counsel informed him of his right to a hearing. He said that although family members were present at his hearing, they were not there to testify.

The Petitioner agreed that he again violated the terms of the community corrections program and that he was resentenced on November 28, 2007. He agreed he had a hearing that day with his family present. He said that although he conceded his violation, he was still unaware of his right to a revocation hearing. He said that he told trial counsel he wanted a sentencing hearing and that trial counsel told him the District Attorney would inform the trial court of additional charges pending against the Petitioner if they held a sentencing hearing. He agreed that he decided to put his sentence into effect at thirty-percent release eligibility with credit for time served and that he "came out" that same day. He disagreed that trial counsel met with him before the hearing on November 28. He agreed he never told the trial court or trial counsel at either of the hearings that he did not want to concede his violations.

On redirect examination, the Petitioner testified that had he been aware of his right to a revocation hearing, he would have requested one. He denied knowing that he was entitled to revocation hearings and said he thought his hearings were for purposes of sentencing only.

The trial court discredited the Petitioner's testimony and stated that the Petitioner "knew [he] had a right to a revocation hearing." The court also noted that the revocation of a community corrections sentence and resentencing occurred at the same hearing. The court found that the Petitioner had not established by clear and convincing evidence that his trial counsel were deficient and denied the petition for post-conviction relief. This appeal followed.

**I**

The Petitioner contends that the trial court imposed illegal sentences on August 17, 2007, and on November 28, 2007, because it failed to conduct formal sentencing hearings, involving specific findings of fact and the weighing of sentencing considerations, before increasing his original sentence. He argues that he was entitled to a sentencing hearing because he did not knowingly and voluntarily enter into his plea agreements and waive his right to a hearing. He also contends that the trial court imposed an illegal sentence on August 17, 2007, because it resentenced him in a higher range than that of his original sentence. The State contends that the trial court properly sentenced the Petitioner after approving his voluntary plea agreements. We agree with the State.

-4-

The burden in a post-conviction proceeding is on the Petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

A trial court has the power, upon revocation of a community corrections sentence, to resentence a defendant to a period of incarceration up to the maximum for the offense originally committed. T.C.A. § 40-36-106(e)(4) (2010). A formal sentencing hearing or a revocation hearing is not required when a defendant concedes that he violated the terms of the community corrections sentence and elects to accept, knowingly and voluntarily, an increased sentence by agreement with the State. State v. Joe W. France, No. E2003-01293-CCA-R3-CD, Jefferson County, slip op. at 4 (Tenn. Crim. App. July 19, 2004) (citing State v. Mahler, 735 S.W.2d 226 (Tenn. 1987)).

Although a trial court has the power to resentence a defendant upon revocation of a community corrections sentence, section 40-36-106(e)(4) does not authorize the court to resentence the defendant in a higher range than that of the original sentence. See State v. Patty, 922 S.W.2d 102, 103-04 (stating that "a trial judge imposing a new sentence as a result of a community corrections failure is bound to sentence the defendant within the range of the original sentence."). However, in the context of plea agreements, "a defendant may plead outside the range if the defendant expressly agrees to a particular offender classification and the sentence imposed is within the statutory limits fixed for the offense of conviction." Terry L. Baker v. State, No. M2002-00400-CCA-R3-PC, Davidson County, slip op. at 7 (Tenn. Crim. App. Dec. 29, 2003) (citing Mahler, 735 S.W.2d at 227; McConnell v. State, 12 S.W.3d 795, 798 (Tenn. 2000)). Furthermore, "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997).

In light of the above, in determining whether the court imposed illegal sentences by failing to conduct a formal sentencing hearing or by resentencing the Petitioner in a higher range than that of his original sentence, the dispositive issue is whether the Petitioner's plea agreements were knowingly and voluntarily entered into. When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to

the totality of the circumstances.  See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).  A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary."  Blankenship, 858 S.W.2d at 904.

With regard to the revocation hearing and resentencing on August 17, 2007, the record reflects that trial counsel informed the trial court that the Petitioner and the State reached an agreement that would allow the Petitioner to remain in community corrections.  She said:

> [The Petitioner] is going to concede his violation.  He's going to acknowledge that he has the five qualifying felonies to make him a range three offender, which would expose him to ten to fifteen years at forty-five percent.  He is going to concede that. He would be released today.  The sentence would be increased to ten years at forty-five percent as a range three offender. . . . He's going to comply with the conditions of the Salvation Army treatment center.

The trial court then stated:

> Mr. McClain, you heard your attorney . . . state . . . that you're conceding your violation; that you have stipulated to the fact that you have five prior felonies, which would make you a range three offender; that you're going to be reinstated to Community Corrections, ten years . . . .  You must go to the Salvation Army. You must be accepted there . . . you understand all of that, don't you?

The Petitioner responded, "Yes, sir."

At the post-conviction hearing, trial counsel testified that she discussed the resentencing with the Petitioner and advised him of his right to a hearing and of the possibility that he could be incarcerated for violating the terms of his community corrections program. She said that the Petitioner accepted the plea agreement to avoid being incarcerated and that he voluntarily agreed to be sentenced to ten years in community corrections at forty-five percent release eligibility. She said that the Petitioner knowingly and voluntarily waived his right to a hearing and that the Petitioner understood the conditions of his plea agreement because he was one of the most intelligent people she had ever represented. The Petitioner testified that he conceded his violation and agreed that he was willing to receive a ten-year sentence in community corrections at forty-five percent release eligibility in order to avoid incarceration. He agreed that he never told the trial court or trial counsel that he did not want to concede his violation. Although the Petitioner claimed at the post-conviction hearing that he was unaware he was entitled to a revocation hearing, the trial court discredited the Petitioner's testimony and stated that the Petitioner knew he had a right to a revocation hearing. The record also reflects that the Petitioner was familiar with revocation hearings, as he had previously violated the terms of community corrections and had his sentence to the program revoked as a result. We hold that under the totality of the circumstances, the Petitioner failed to establish that he did not knowingly and voluntarily enter into his plea agreement with the State on August 17, 2007.

With regard to the revocation hearing and resentencing on November 28, 2007, the record shows that trial counsel informed the trial court that the Petitioner and the State reached a plea agreement, subject to the court's approval. She said:

> [The Petitioner is] going to concede his Community Corrections violation. His sentence will be amended today to a ten-year at thirty percent sentence. Going to have the Court place the sentence into [e]ffect with all of his jail credit and all of his Community Corrections street time . . . [a]nd he understands that all of that credit will count towards his parole eligibility.

The trial court then stated, "Mr. McClain, you heard your attorney state that you're conceding, waive your right to a hearing. Your sentence is being amended to a ten-year TDOC sentence and you will receive all your jail credit. Is that your understanding?" The Petitioner responded, "Jail credit and street credit." The court clerk stated, "I'll give him all that, but it's going to take me a few." The Petitioner responded, "Yes, ma'am. I understand that. I just wanted to make sure." The court told the Petitioner that he would "be going before the parole board before you can breath[e], once you get out there," and he responded, "Yes, sir." This verbal exchange reflects that the Petitioner knew and understood the terms of his plea agreement

At the post-conviction hearing, the Petitioner agreed he conceded his violation. He agreed he never told the trial court or trial counsel that he did not want to concede his violation. He also agreed he decided to put his sentence into effect at thirty-percent release eligibility after trial counsel told him that the District Attorney would inform the trial court of additional charges pending against the Petitioner if they held a formal sentencing hearing. Although the Petitioner claimed at the post-conviction hearing that he was unaware he was entitled to a revocation hearing, the trial court discredited the Petitioner's testimony and stated that the Petitioner "knew [he] had a right to a revocation hearing." The record also reflects that the Petitioner was familiar with revocation hearings. We hold that under the totality of the circumstances, the Petitioner failed to establish that he did not knowingly and voluntarily enter into his plea agreement with the State on November 28, 2007.

Because the Petitioner conceded that he violated the terms of his community corrections sentences and knowingly and voluntarily agreed to accept increased sentences by agreements with the State, formal sentencing and revocation hearings were not required on August 17, 2007, or on November 28, 2007. See Joe W. France, slip op. at 4. Additionally, because the Petitioner's plea agreement on August 17, 2007, reflects that he agreed to a Range III offender classification and the ten-year sentence was within the statutory limit fixed for his conviction for the sale of less than one-half gram of cocaine, the trial court did not err by resentencing the Petitioner in a higher range than that of his original sentence. See Terry L. Baker, slip op. at 7; T.C.A. § 40-35-112 (2010). Furthermore, the Petitioner's knowing and voluntary plea agreements waived any irregularities as to his offender classification or release eligibility. See Hicks, 945 S.W.2d at 709. The Petitioner is not entitled to relief on these issues.

**II**

The Petitioner contends that trial counsel at the August 17, 2007 hearing rendered ineffective assistance by not informing him of his right to a revocation hearing where he could contest his community corrections violation, by allowing the court to sentence him in a higher range than that of his original sentence, by failing to conduct an adequate investigation, and by "coercing" him to agree to an increased sentence. The Petitioner also contends that trial counsel at the November 28, 2007 hearing rendered ineffective assistance by failing to insist that the trial court conduct a formal sentencing hearing, by not informing him of his right to a sentencing hearing, by not explaining the differences between sentencing ranges, by allowing the trial court to impose an illegal sentence outside of his range, by failing to conduct an adequate investigation, and by "coercing" him to agree to an increased sentence. The State contends that the Petitioner has failed to show that trial counsel at either hearing was deficient or that he was prejudiced by any perceived error. We agree with the State.

As noted above, the burden in a post-conviction proceeding is on the Petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Dellinger, 279 S.W.3d at 294. Once a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields, 40 S.W.3d at 456-57. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, in order to prove prejudice, a petitioner "'must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" House v. State, 44 S.W.3d 508, 516 (Tenn. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Our supreme court has held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See id. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State,

847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

With regard to the Petitioner's claim that trial counsel at the August 17, 2007 hearing rendered ineffective assistance, the Petitioner has not shown by clear and convincing evidence that trial counsel failed to inform him of his right to have a revocation hearing or that counsel failed to conduct an adequate investigation before the hearing. Trial counsel testified at the post-conviction hearing that she was prepared for the revocation and sentencing hearing. She said she investigated the circumstances of the Petitioner's community corrections violation and the law controlling revocation hearings and resentencing before the hearing. She agreed that she discussed community corrections and the resentencing with the Petitioner and that she advised the Petitioner of his rights, of his ability to have a hearing, and of the possibility that he could be incarcerated for violating the terms of his community corrections program. She said that the Petitioner knowingly and voluntarily waived his right to a hearing and that the Petitioner understood the conditions of his plea agreement because he was one of the most intelligent people she had ever represented.

With regard to the Petitioner's claim that trial counsel "coerced" him into accepting the plea agreement, nothing in the record suggests that trial counsel coerced the Petitioner, and he has not shown otherwise. At the post-conviction hearing, the Petitioner agreed that he was willing to receive a ten-year sentence of community corrections at forty-five percent release eligibility in order to avoid incarceration. Trial counsel also testified that the Petitioner voluntarily entered into the plea agreement to avoid incarceration.

Lastly, the Petitioner has not shown that trial counsel was deficient for allowing the court to sentence him in a higher range than that of his original sentence. As noted above, because the Petitioner's plea agreement on August 17, 2007, reflects that he agreed to a Range III offender classification and the ten-year sentence was within the statutory limits fixed for his conviction, the trial court did not err by resentencing the Petitioner in a higher range than that of his original sentence. See Terry L. Baker, slip op. at 7. We hold that the Petitioner has not shown that trial counsel's actions at the August 17, 2007 hearing were deficient or prejudicial. The Petitioner is not entitled to relief on this issue.

With regard to the Petitioner's claim that trial counsel at the November 28, 2007 hearing rendered ineffective assistance, the Petitioner has not shown by clear and convincing evidence that trial counsel failed to inform him of his right to have a sentencing hearing. His testimony at the post-conviction hearing reflected that he knew he was entitled to a sentencing hearing, as he denied knowing that he was entitled to revocation hearings and said

he thought his hearings were for purposes of sentencing only. The Petitioner also has not shown that trial counsel was deficient for allowing the court to impose an "illegal sentence outside of his range." The record reflects that the Petitioner conceded a violation of the community corrections program and that his sentence was amended, pursuant to a plea agreement, to ten years' confinement as a Range II, multiple offender but with thirty-percent release eligibility, which is a release eligibility associated with Range I offenders. A Range II offender convicted of a Class C felony can be sentenced to not less than six nor more than ten years. See T.C.A. § 40-35-112. The Petitioner's sentence was within this range. Furthermore, the Petitioner's knowing and voluntary plea agreement waived any irregularities as to his offender classification or release eligibility. See Hicks, 945 S.W.2d at 709. Additionally, the Petitioner has not shown that counsel rendered ineffective assistance by failing to insist that the court conduct a formal sentencing hearing. Because the Petitioner conceded that he violated the terms of his community corrections sentence and knowingly and voluntarily agreed to accept a ten-year sentence by agreement with the state, a formal sentencing and revocation hearing was not required. See Joe W. France, slip op. at 4.

With regard to the Petitioner's claims that trial counsel failed to explain the differences between sentencing ranges, failed to conduct an adequate investigation, and coerced him to agree to an increased sentence, the Petitioner has not established these claims. We note that trial counsel from the November 28, 2007 hearing did not testify at the post-conviction proceedings. The Petitioner did not mention these claims at the post-conviction hearing and has offered no proof to establish these claims. We hold that the Petitioner has not shown that trial counsel's actions at the November 28, 2007 hearing were deficient or prejudicial. The Petitioner is not entitled to relief on this issue.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE